## J. J. MERCARDO JR. v. THE STATE.

### No. 5684.   Decided January 28, 1920.

**1.—Wife and Child Desertion—Definition of Offense.**

To be guilty of the offense defined in chapter 9a, Vernon's Penal Code, the State must prove that the accused deserted and neglected or refused to provide for his wife, or children under sixteen years of age, that such conduct on his part was wilful and without justification, and that such wife or children were in destitute or necessitous circumstances at the time.

**2.—Same—Definitions—Words and Phrases.**

The term wilful means not only with evil intent and malice but also implies a set purpose and design, and the term justification is defined as a sufficient lawful reason why a party did or did not do the thing charged.

**3.—Same—Marriage—Obligations and Duties of Husband and Wife.**

Marriage is a partnership with mutual obligations and duties, and when either party refuses to meet the fair demands of a partnership contract the law will not compel the other party to a further observance of these demands.

**4.—Same—Insufficiency of the Evidence.**

Where, upon trial of the wilful desertion by the defendant of his wife and children, the evidence failed to show that he wilfully and without justification deserted, or neglected, or refused to provide for his wife or children on the date alleged in the indictment, the conviction can not be sustained.   Following:  Irving v. State, 73 Texas Crim. Rep., 615, 166 S. W. Rep., 1166, and other cases.

Appeal from the Criminal District Court of Harris.   Tried below before the Hon. C. W. Robinson, judge.

Appeal from a conviction of wilful wife and child desertion; penalty, six months' confinement in the county jail.

The opinion states the case.

*B. L. Palmer,* for appellant.

*Alvin M. Owsley,* Assistant Attorney General, and *Fred R. Switzer,* Ass't Criminal District Attorney of Harris County, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the County Court at law No. 2, of Harris County, of the wilful desertion, etc., of his wife and children, and his punishment fixed at six months imprisonment in the county jail.

The offense for which this conviction was had is set forth in Chapter 9-a, of Vernon's Penal Code.   To be guilty of said offense, certain things must affirmatively appear from the evidence in any

given case, to wit; (1) That the accused deserted, and neglected or refused to provide for his wife, or children under sixteen years of age; (2) That such conduct on his part was wilful and without justification; (3) That such wife or children were in destitute or necessitous circumstances at the time. If the testimony failed in any one of these requisites, the case is not made.

The term "wilful" has been often defined by our courts, and as applied to this statute, we think means not only with evil intent and malice, but that it also implies a set purpose and design. Justification is defined as a sufficient lawful reason why a party did or did not do the thing charged.

Let us discuss the facts pertinent to the three issues involved in this offense as above outlined, and the law applicable thereto; Do the facts show that the appellant wilfully and without justification deserted, or neglected, or refused to provide for his wife or children, on the date alleged in the indictment, to wit: April 8, 1919, or theretofore? The children in question were boys, aged eleven and twelve years respectively, and they did not testify in the case. The wife did. Her evidence, condensed, showed that prior to April, 1919, her husband worked in Mexico, and that while there he sent her $125 per month; that she had two boys rooming with her, who paid her $40 per month, and another roomer who paid her $25 per month; and that she was a teacher and earned about $40 per month for teaching—making a total income of $230 per month. Her husband lost his position in Mexico about April 1, and came home. On April 15th, she moved to 2305 Genesee Street, in the City of Houston, and appellant paid a month's rent for her in advance, and gave her $40, since which time he has given her nothing; and she further stated that since she moved to Genesee Street her husband had not lived with her.

It further appears that after this indictment was returned against appellant, on June 2d, he agreed to pay to his wife and children $60 per month, none of which had been paid at the time of the trial, June 24th. This is the substance of the State's case.

For appellant, it was shown that while in Mexico, his salary was $150 per month and expenses; that he sent his wife regularly $125 per month; that when he lost his said position, he came home, bringing some little presents, and when he arrived he found his wife in bed, and that she refused to kiss him, and told him she would not kiss him, and did not want to live with him, and wanted a divorce. This was about April 1st. The house they lived in cost $25 per month rent, and about April 15th, the wife rented a house on Genesee Street at $30 per month. Appellant paid the first month's rent and gave her $40. Appellant's further uncontradicted testimony was that when he came home he went to work for the Gulf Coast Realty Company, selling real estate, and that his actual earnings since his return to the time of the

trial, had not been $15, all told. He also said that when he agreed to give his family $60 per month, he fully intended to do so, but had had no money to pay it with; that it was his intention to pay said amount out of his first earnings. It also appears that prior to the trial, the wife had brought suit against appellant for divorce, and he had filed a cross-action, asking for the custody of the two children, and had enjoined her from taking them out of the jurisdiction of the court. On cross-examination, the wife made the following statement: "It is true that from the time he got back that I refused to have anything to do with him as a wife; refused to perform the duties of a wife."

We think this evidence just the opposite to that necessary to support the propositions laid down by the article under which this prosecution was had. Instead of appellant leaving the wife and children wilfully and without justification, it appears beyond question from the wife's own lips that notwithstanding he had sent her five-sixths of his salary while absent, from the very day of his return she refused to have anything to do with him as a wife, or to perform for him any duties as a wife. Such refusal on her part is not shown to have been with any excuse or reason, and such refusal, in our opinion, would be ample justification for any failure on his part to further support her. Marriage is a partnership, with mutual obligations and duties, and when either party refuses to meet the fair demands of the partnership contract, the law will not compel of the other party a further observance of them.

It is a just law written on our statute books, which penalizes the husband and father who wilfully shirks his part of the marital burden; but a thousand precepts from the hands of the Great Law Writer of the Universe, reinforced by every unwritten law of nature, impose upon both husband and wife duties and obligations to which they must respond; and based on our concept of the graver character of the responsibility of both to the behest of these divine laws, we unhesitatingly hold that if the wife trampled upon the sacred duties of a wife to her husband, at a time when he was fully meeting and performing his part of such contract, such violation of the laws of God and Nature, should justify him in the eyes of the laws of man, in withholding further compliance with his duty to her. The facts in testimony show that while he had means, he gave her the larger portion of same, and that even after she turned away from him, and after the date laid in the indictment, he paid her house rent, and gave her more money than he earned—probably the remnant left him from the days when his wages were larger. There is nothing in the record suggesting any attitude of wilfulness in the appellant's failure to pay, after he lost his position, nor that he did not desire or intend to support his children. He asked for them in the divorce proceedings, and enjoined the wife from taking them away from the county. He swore that out

36—86—T. C.

of the first money he might make from his new work, he intended to pay the amount he had agreed to contribute to the wife, who voluntarily refused to meet her duties to him.

We *do not like to overturn verdicts for insufficiency* of evidence, but when the testimony shows that the husband did not desert the wife, but in truth and in fact she turned from him; that he did not wilfully neglect or refuse to provide for her or his children, but gave to them all, or the major part of his earnings, and that at the time laid in the indictment they were not in distress or necessitous circumstances, but had house-rent paid, and money beside and nothing appears which combats his expressed intention to meet the requirements of the law, when financially able so to do we will not hesitate to say that the verdict is against the law and the evidence. See Irving v. State, 73 Texas Crim. Rep., 615, 166 S. W. Rep., 1166; Wallace v. State, 85 Texas Crim. Rep., 191, 210 S. W. Rep., 206.

The judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*